**(UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cr-00191-1** |
| | ) | |
| **JAMES THOMAS JOHNSON, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

The grand jury indicted James Thomas Johnson, Jr. on firearm and drug trafficking charges following a search of 201 Gifford Place, Room 152, his cellphone and his truck. He has filed a motion to suppress the evidence obtained from that search because he argues that the search-warrant affidavit failed to establish a probable cause nexus between his alleged drug trafficking and Room 152. (Doc. No. 37). The Government has responded in opposition. (Doc. No. 47).

According to Johnson, the affidavit supporting the search warrant "relied solely on Johnson's status as a suspected drug dealer and his association with the hotel room." (Doc. No. 38 at 8). Because the affidavit offered "no evidence that Johnson's alleged criminal activity" occurred in the hotel room or that Johnson used the room "immediately preceding or subsequent to any controlled buys," Johnson argues that there was no probable cause "nexus" between his alleged drug trafficking and Room 152. (Id.) As such, he argues that the search warrant violates the Fourth Amendment to the Constitution

Whether an affidavit presents probable cause for a search warrant depends on the totality of the circumstances of what is in the affidavit, not what is missing from it. United States v. Long, 155 F.4th 829, 837 (6th Cir. 2025); United States v. Sanders, 106 F.4th 455, 463 (6th Cir. 2024)

(en banc). When viewed in that light, the Court finds that the affidavit established that Johnson was a known drug dealer engaged in ongoing and continuous drug trafficking and that he was in control of Room 152 during the relevant period. That was sufficient to establish a probable cause nexus between Johnson's drug trafficking and Room 152. Johnson's motion to suppress will be denied.

**AFFIDAVIT IN SUPPORT FOR SEARCH WARRANT**

Special Agent Dalton Reinke with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") presented his affidavit to the Magistrate Judge for a search warrant. (Doc. No. 38-1 at 3). After summarizing his education, law enforcement training, and experience in drug trafficking investigations, he explained that ATF worked with the Robertson County, Tennessee Sheriff's Office to investigate drug trafficking in Robertson County. (Id. at 3–5). Johnson, who has a criminal history and prior drug trafficking convictions, emerged during the investigation as a target engaged in trafficking drugs. (Id. at 5).

From March 2025 to July 2025, Johnson engaged in multiple controlled drug purchases orchestrated by ATF with a confidential informant. (Id. at 5–12). These controlled drug purchases took place in Springfield, Tennessee. (Id.) On six occasions, the confidential informant arranged to purchase $100.00 worth of cocaine from Johnson, and on the seventh, the confidential informant arranged to purchase a half-ounce of cocaine for $400.00. (Id. at 5–11).

The transactions involved several different vehicles. It is important here that the July 16 and July 22 transactions involved a white four-door Dodge 2500. (Id. at 6–11). Each purchase followed a set protocol and was corroborated by audio recordings of the transactions. (Id. at 4 n.2). The cocaine sold by Johnson was confirmed by laboratory analysis. (Id. at 6–12). Although not part of the controlled drug purchases, the confidential informant told ATF "of the CI's own

accord" that the confidential informant purchased cocaine for a third party from Johnson on August 3, 2025. (Doc. No. 38-1 at 12 n.3).

Two days after the last controlled drug purchase, ATF and Robertson County Sheriff's Office detectives observed a white Dodge Ram 2500 truck at the Days Inn located at 201 Gifford Place, Joelton, Tennessee. (Id. at 11–12). The truck matched the description of the white Dodge 2500 Johnson used for the July 16 and July 22 controlled drug purchases in Springfield. (Id.) On multiple days and multiple times during the day, ATF confirmed Johnson's repeated connection to the Days Inn through observations, mobile telephone location tool, hotel records and GPS phone ping data. (Id. at 12–14).

On July 29, 2025, Reinke served AT&T Mobility with a search warrant requesting GPS location data for Johnson's phone, and on July 31, 2025, AT&T installed a mobile locator tool on the phone. (Id. at 12). ATF then confirmed with Days Inn that Johnson in fact rented Room 152 from June 25 through August 5, 2025. (Id. at 13). GPS location data then showed it was at the Days Inn from July 31, 2025 to August 1, 2025, as well as in the general area on July 16, 2025 and July 22, 2025, "the dates of two of the earlier controlled sales." (Id. at 12–13). ATF also observed Johnson's truck at the Days Inn at 10:00 a.m. and 2:00 p.m. on July 30, 2025. (Id. at 13). His truck was again observed at Days Inn on August 1, 2025 at 5:10 a.m. and at 5:36 a.m. when a person matching Johnson's description was observed leaving the area of Room 152. (Id. at 13–14). Later on August 1 at approximately 2:45 p.m. Johnson was seen entering Room 152 after parking his truck in front of Room 152. (Id. at 14). Then, he reentered the truck after coming out of Room 152 and drove out of the Days Inn's parking lot. (Id.) Finally, on August 4, 2025, Johnson's truck was at the Days Inn from 5:25 a.m. to 7:00 a.m., which was verified by GPS phone ping data. (Id.)


Case 3:25-cr-00191 Document 48 Filed 09/11/26 Page 3 of 8 PageID #: 148

Based on his experience from and knowledge of other drug investigations, Reinke shared with the Magistrate Judge "common practices of drug traffickers." (Doc. No. 38-1 at 14). This included that drug traffickers typically have "large amounts of cash," "maintain books, records, receipts, notes, ledgers . . . and other documents" related to drug trafficking, and "possess firearms." (Doc. No. 38-1 at 15–16). And important to the pending motion, according to Reinke drug traffickers "hide contraband, proceeds of illegal drug trafficking, and records . . . in secure locations such as their residences" or "other locations . . . they control" and will "conceal" "proceeds of such criminal activities" in those locations, as well as information on "associates or customers" in the drug trafficking operations. (Id.)

The Magistrate Judge issued the search warrant on August 4, 2025. ATF and Robertson County Sheriff officers executed the search warrant on August 5, 2025. In Room 152 they found $1,058.00 in cash, crack cocaine, powder cocaine, marijuana, a digital scale, blue notebook, an iPhone and a loaded 38 caliber Taurus Revolver. (Doc. No. 47 at 9–10). In Johnson's truck was $7,500.00 in cash, crack and powder cocaine, a digital scale, plastic baggies and a blue flip phone. (Id.)

## ANALYSIS

The Fourth Amendment requires "probable cause" for "Warrants [to] issue." U.S. Const. amend. IV. But probable cause is "incapable of precise definition or quantification into percentages," United States v. Sanders, 106 F.4th 455, 461 (6th Cir. 2024), and "lacks a precise mathematical formulation." United States v. Long, 155 F.4th 829, 834 (6th Cir. 2025). "As a result, probable cause is a product of 'the totality of the circumstances' and depends in part on whether 'there is a fair probability that contraband or evidence of a crime will be found in a

particular place.'" (Id.) This is sometimes referred to as the "nexus between the place to be searched and the evidence sought." (Id. at 835).

Johnson's core argument that the search warrant here violates the Fourth Amendment is that it was "solely" based on his status as a suspected drug dealer. (Doc. No. 38 at 8). To be sure, the en banc Sixth Circuit has rejected a categorical rule that an affidavit establishing only that a defendant is a known drug dealer and lives at a particular location can never establish the required nexus. Sanders, 106 F.4th at 465. "That the known drug dealer 'inference can be drawn permissibly in some cases,'" however, "does not mean that probable cause is necessarily satisfied whenever the home of someone connected to a drug trafficking crime is identified." (Id. at 466).

A lawful search warrant affidavit "includes details about the timeliness of the information presented, the nature of the crime involved, the objects to be seized, and the place to be searched." (Id. at 461). This information may be augmented by controlled buys, police surveillance, the suspect's criminal history and the officer's training and experience. (Id. at 461–62). At bottom, in the context of a known drug dealer engaged in "continual-and-ongoing" drug trafficking operations, United States v. Simmons, 129 F.4th 382, 387–88 (6th Cir. 2025), "a probable cause nexus exists when an affidavit establishes two things: one, that the address to be searched is the home of the suspect, and, two, that the suspect is engaging in continual and ongoing drug trafficking operations." Long, 155 F.4th at 835; see also Sanders, 106 F.4th at 466 ("[P]robable cause to search a known drug dealer's residence is established where the dealer is engaged in 'continual and ongoing operations.'") (citation omitted). When an affidavit satisfies those two inquiries, "it provides circumstantial evidence of a nexus between the suspect's home and his criminal activity to justify a search of the home." Long, 155 F.4th at 835.

The totality of the information in Reinke's affidavit for a search warrant presented to the Magistrate Judge was sufficient to establish a probable cause nexus between Johnson, a convicted drug dealer who engaged in multiple hand-to-hand drug deals, and Room 152 and the truck he used during several of the controlled drug purchases. Johnson rented Room 152 while his drug trafficking was ongoing, and law enforcement repeatedly connected him and the truck to the Days Inn. The search warrant for Room 152 and Johnson's truck was proper because "experience and common sense teaches" that evidence of his drug operation would likely be found there. Long, 155 F.4th at 836. Johnson's status as a convicted drug offender was known by ATF, but that was only the starting line of its investigation, not the finish line.

Over the course of almost six months, March to August 2025, Johnson emerged as a target in a drug trafficking investigation in Robertson County, Tennessee. (Doc. No. 38-1 at 5–12). From March through July 2025, Johnson engaged in seven controlled cocaine transactions. (Id.) Six involved purchases of $100 worth of cocaine, while the final transaction on July 22 involved a half-ounce of cocaine for $400. (Id. at 5–11). While the controlled drug purchases were ongoing in Springfield, Tennessee, Johnson, in June 2025, rented Room 152 in the Days Inn in Joelton, Tennessee through August 5, 2025. (Id. at 13). At least two of the controlled drug deals—July 16 and 22—occurred after Johnson took control of Room 152. (Id. at 10–13). During both of those transactions, Johnson used a white four-door Dodge 2500 truck. (Id. at 10–11). Two days after the July 22 transaction, ATF and Robertson County Sheriff's Office detectives observed a white Dodge Ram 2500 truck at the Days Inn that matched the truck used in those two controlled purchases. (Id. at 13–14). To confirm and verify that it was in fact Johnson, ATF used GPS location data and GPS phone ping data to place Johnson's phone at the Days Inn from July 31 into August 1 and again on August 4. (Id. at 12–14). Between those dates, law enforcement's

surveillance observed his truck near Room 152 and a Black male matching Johnson's description leaving and returning to the area of Room 152. (Id. at 13). Later on August 1, detectives identified Johnson himself entering Room 152 after parking the truck directly in front of the room and, about one minute later, leaving Room 152, reentering the truck, and driving away. (Id. at 13–14). ATF then used its experience and common sense to conclude that evidence of Johnson's drug trafficking operation would be in Room 152 and his truck. (Id. at 14–18).

On the very day (August 4, 2025) that ATF sought the search warrant, the confidential informant volunteered that Johnson's drug trafficking was ongoing. (Id. at 12 n.3). The night before, August 3, the confidential informant reported that he had purchased a small quantity of cocaine from Johnson at the behest of a third party. (Id.) So the affidavit in support of the search warrant sufficiently presented a basis to conclude that Johnson was continuing to engage in ongoing drug operations.

Based upon the four corners of Reinke's affidavit for a search warrant—measured against Sixth Circuit known drug dealer cases and the continual-and-ongoing-operation theory—there was probable cause to search Room 152 and Johnson's truck. Johnson had control over Room 152 during at least two controlled drug purchases. (Id. at 10–13). He had regular contact with Room 152 during the period surrounding those controlled purchases. (Id. at 12–14). The Sixth Circuit has made the "common sense" observation that evidence of a drug operation is likely to be in places that drug dealers control. Long, 155 F.4th at 835–36; Sanders, 106 F.4th at 465–66. Johnson used the white Dodge 2500 during the July 16 and July 22 controlled purchases. (Doc. No. 38-1 at 10–11). Finally, the affidavit provided circumstantial evidence that Johnson's phone was part of his drug operation. Johnson used that phone during the July 16 and July 22 controlled purchases. (Id. at 12 n.4). True, there is no direct evidence that ties Room 152 to drug dealings.

Reinke's affidavit, however, presents circumstantial evidence that Room 152 was controlled by Johnson while his drug trafficking operation was ongoing. There was probable cause to believe that evidence of his drug operations would be found in Room 152 and Johnson's truck.

Because the search of Room 152 and Johnson's truck was supported by probable cause, the evidence obtained under the later warrant for Johnson's cellphone is not fruit of an unlawful search. Accordingly, the Court need not address Johnson's argument that the August 29 warrant was deficient. And because the Court finds that the August 4 warrant was supported by probable cause, it need not consider the Government's alternative argument that the good-faith exception applies. Johnson's motion to suppress will be denied.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE